ZOPFI v. POSTAL TELEGRAPH CABLE CO.

(Circuit Court of Appeals, Sixth Circuit. April 3, 1894.)

No. 177.

1. NEGLIGENCE—PROXIMATE CAUSE.

An obstruction in a highway is not the proximate cause of an injury sustained by one slipping and falling thereon, unless its presence caused, or contributed to cause, the fall.

2. SAME—QUESTION FOR JURY.

Where the jury may reasonably infer that one crossing a highway had to jump over an obstruction to reach a platform at the side of the way, in such a way that his foot slipped on the platform, and he fell backward on the obstruction, it is for them to determine whether the presence of the obstruction contributed to the fall.

Appeal from the Circuit Court of the United States for the Middle District of Tennessee.

This was an action by Emma Zopfi, by her next friend, against the Postal Telegraph Cable Company, to recover damages for personal injuries. The circuit court directed a verdict for defendant, and entered judgment accordingly, to review which plaintiff sued out this writ of error.

John Ruhm & Son, James Trimble, and E. L. Gregory, for plaintiff. Vertrees & Vertrees, for respondent.

Before LURTON, Circuit Judge, and BARR and KEY, District Judges.

KEY, District Judge. The defendant undertook to erect a telegraph line on the turnpike road between Nashville and Gallatin, Tenn. The poles which were to support the wires were placed along the turnpike at or near the points at which they were to be erected. The plaintiff, who is a minor, and was 13 years of age at the time of the injury complained of, lived with her father, who is her next friend in this action, upon the Gallatin pike, about three miles from Nashville. He owned a parcel of land occupied as his home, which abutted upon the turnpike. There was a pathway leading from his

house to the pike. At the point where this path reached the pike, there was a gate. There was a strip of the public road, of about 10 feet, between this gate and the metaled portion of the pike. Across this strip, the pike was approached over a platform about four feet in length, and then by stepping-stones. This strip, especially in rainy weather, was covered with water and mud. One of the poles mentioned was placed lengthwise along the turnpike, so that its large end extended along about one-half or two-thirds of the side of the platform at the gate, about a foot or more from the platform, and covered the stepping-stone, or nearly all of it, next the platform. The distance from the stepping-stone which could be used, to, the platform, was 33 inches. The day was very rainy, and the end of the platform across which the pole did not extend could not be reached, except by going through water and mud. The pole was a peeled chestnut, and the platform was wet and slippery. The plaintiff was returning from school upon the afternoon of September 23, 1890, and approached the gate mentioned with an umbrella in one hand, and her school books in the other. Reaching the stepping-stone next to the pole, she stepped over the pole, without touching it, to the platform, when her foot slipped, and she fell backward upon the pole; and by her contact therewith, in her fall, she was seriously and permanently injured in her right hip, to recover damages for which this suit is brought. Upon the trial of the cause the judge directed the jury to return a verdict in favor of the defendant, which was done; and error is assigned upon this action of the judge, because, it is said, the cause should have been submitted to the jury for their consideration and determination.

It is urged on behalf of the plaintiff that, though the pole may not have been the proximate cause of the fall of the plaintiff, it was the proximate cause of her injury, and, as the pole was left there by the negligence of the defendant, it is liable, and that whether this is so, or not, should have been left to the jury to decide.

What are proximate or remote causes of injury, or what are proximate or remote damages for injuries, are subjects involved in much confusion and conflict by the decisions of courts and the dissertations of law writers. Wharton says:

"A negligence is the juridical cause of an injury, when it consists of such an act or omission on the part of a responsible human being as, in ordinary, natural sequence, immediately results in such injury." Whart. Neg. § 73.

He further says:

"At this point emerges the distinction between conditions and causes; a distinction, the overlooking of which has led to much confusion in this branch of the law. What is the cause of a given phenomenon? The necessitarian philosophers, who treat all the influences which lead to a particular result as of logically equal importance, and who deny the spontaneity of the human will, tell us that the cause is the sum of all the antecedents. Thus, for instance, a spark from the imperfectly guarded smoke pipe of a locomotive sets fire to a haystack in a neighboring field. What is the cause of this fire? 'The sum of all the antecedents,' answers Mr. Mill, the ablest exponent of the necessitarian philosophy. Apply this concretely, and it would be difficult to see how any antecedent event can be excluded from taking a place among the causes by which the fire in question is produced. Certainly,

we must say that either if the railroad in question had not been built (an event depending upon an almost infinite number of conditions precedent, among which we may mention the discovery of iron, steam, and coal), or the haystack in question had not been erected (to which there is also almost an infinite number of necessary antecedents, the failure of any one of which would have involved the failure of the haystack), no fire would have taken place. Jurisprudence, however, does not concern itself with refinements such as these. Its object is to promote right and redress wrong; and, without undertaking to propound any theory of the human will, it contents itself with announcing as a fact established by experience that, by making a law that a human 'antecedent' shall be punishable for a wrongful act, such 'antecedent,' if not restrained from committing the wrong, may be compelled to redress it. The question, therefore, when an injury is done, is whether there is any responsible person who could, if he had chosen, have prevented it, but who, either seeing the evil consequences, or negligently refusing to see them, has put into motion, either negligently or intentionally, a series of material forces by which the injury was produced. This is the basis of the distinction between conditions and causes. We may concede that all the antecedents of a particular event are conditions without which it could not exist, and that, in view of one or another physical science, conditions not involving the human will may be spoken of as causes. But, except so far as those conditions are capable of being molded by human agency, the law does not concern itself with them. Its object is to treat as causes only those conditions which it can reach, and it can reach these only by acting on a responsible human will. It knows no cause, therefore, except such a will; and the will, when thus responsible, and when acting on natural forces in such a way as through them to do a wrong, it treats as· the cause of the wrong. As a legal proposition, therefore, we may consider it established that the fact that the plaintiff's injury is preceded by several independent conditions, each one of which is an essential antecedent of the injury, does not relieve the person by whose negligence one of these antecedents has been produced from liability for such injury. On the other hand, the fact that a party is shown to have been negligent in a particular proceeding does not make him liable for an injury produced by conditions to which his negligence did not contribute." Whart. Neg. (2d Ed.) § 85.

Regarding these principles as sound, it follows that the liability for the plaintiff's injury depends upon the cause of her fall. If the pole was the cause of her fall, or one of the causes which made her fall, the defendant is liable for the injury, for the fall is the juridical cause of the injury. Suppose a steamboat sinks in the river because of the negligence of its officers, and a passenger is drowned, and its cargo is lost. The water drowns the passenger, and destroys the cargo. It is the immediate cause of the destruction of both. But the negligence of those in control of the boat is the juridical cause of the loss.

The position of plaintiff's counsel, that, though the pole may not be the cause of plaintiff's fall, yet it is the cause of her injury, and defendant is liable therefor, is not sustained by the cases in 90 and 91 Tenn., and 17 and 20 S. W., which are cited as authority for them. In Deming v. Storage Co., 90 Tenn. 352, 17 S. W. 89, the court says:

"It is insisted here that neither the delay nor the breakage of the train, but the fire, was the proximate cause of the loss. In this we do not concur. Granting that the slight delay would not, of itself, have made the company liable, here we have, in addition, the breaking of train machinery when the effort is made to remove the cotton, but for which it might have been saved, notwithstanding the fire. This, we think, was, therefore, the proximate cause of the loss. * * * It is true that the fire destroyed the

cotton, and in that sense caused the loss; but it appears that, notwithstanding the occurrence of the fire, the cotton would not have been burned by it, had not the breaking of the train, while it was being removed, happened, so that but for this fact the cotton would have been saved. This must, therefore, be held to be the proximate cause of the loss, and if it was the result of negligence the carrier must answer for it."

In this case there is a proximate juridical cause for the injury, —the weakness or insufficiency of the machinery with which effort was made to remove the cotton, and the delay in consequence, while in the case we have in hand the contention is that, though the pole may not have caused the fall, it produced the injury. Upon this theory there is no contribution by the pole to the fall of the plaintiff, but the step upon the slippery platform caused the fall, and the fall upon the pole produced the injury. There was no conjoint, concurrent causation in the parts performed by the step upon the platform and by the pole, according to plaintiff's position. One caused the fall, and the other, not contributing to the fall, produced the injury, so that the part performed by each in the incident was separate, distinct, and independent, instead of co-operative and concurrent, according to plaintiff's contention.

Nor does the case of Railway Co. v. Kelly, 91 Tenn. 699, 20 S. W. 312, give support to plaintiff's insistence in this respect. In that case, as well as in the case of Deming v. Storage Co., supra, the goods were destroyed by fire, but the fire did not occur through any negligence on the part of the defendant, and some other cause for the loss must be found before defendant could be held liable therefor. In the Kelly Case the court says:

"The fire and the loss may have different causes. The fire destroyed the goods, but it does not follow that the cause of the fire and the cause of the loss to the plaintiff were one and the same, in legal contemplation. They may have been entirely different. The failure to deliver the goods when demanded did not cause the fire, but it did cause the loss, in such sense that they would not have been lost without the failure. Had the defendant delivered the goods, they would have been removed, and the loss averted. The negligent and wrongful detention of the goods, and that alone, exposed them to the fire; and but for that detention they would not have been destroyed, though the fire did occur. Thus, it becomes obvious that the negligence of the railway company was the proximate cause of the loss." 91 Tenn. 703, 20 S. W. 312.

The proof showed that the goods had been in the carrier's depot for four days, and had been destroyed by fire on the fifth, and that, on each of these days, plaintiff had inquired for the goods, for the purpose of removing them, and was informed the goods had not arrived. In this case the court declares the negligence of the defendant to be the proximate, legal cause of the loss, and there is none other to be found. In the cause in hand, if it be admitted that the pole did not contribute to plaintiff's fall, but that the same was caused solely by the step upon the platform, the proximate, juridical cause of the injury must be found in one or the other of these incidents, and not in both; for, though they followed each other, they were not produced by the concurrent, co-operating influence of both, but the cause and the result arose from distinct and independent agencies; and so the fall must have been the prox-

imate cause of the injury. The cases just mentioned, instead of supporting plaintiff's theory, and sustaining the recent decision of the supreme court of Tennessee referred to in argument, are in conformity with the opposing view.

The other cases referred to by plaintiff's counsel have no analogies with the present case that make them of authority in its decision. They arise in cases in which the law, either municipal, statutory, or common, imposed duties upon persons or corporations, which their failure to observe and perform resulted in the injuries for which the suits were brought. Our opinion on this branch of plaintiff's contention is that there was no error in the judge's holding.

Plaintiff's counsel further insist that the judge erred in taking the case from the jury, and in declining to allow it, under the facts established by the evidence, to determine whether the negligence of the defendant was the proximate cause of the injury.

In Insurance Co. v. Doster, 106 U. S. 30, 32, 1 Sup. Ct. 18, it was said that, "where a cause fairly depends upon the effect or weight of testimony, it is one for the consideration and determination of the jury, under proper directions as to the principles of law involved," and that a case should never be withdrawn from them "unless the testimony be of such conclusive character as to compel the court, in the exercise of a sound judicial discretion, to set aside a verdict returned in opposition to it." So, in Randall v. Railroad Co., 109 U. S. 478, 482, 3 Sup. Ct. 322, it was declared to be the settled law "that when the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such verdict must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant." Goodlett v. Railroad Co., 122 U. S. 411, 7 Sup. Ct. 1254. "A case should not be withdrawn from the jury unless the conclusion followed, as matter of law, that no recovery could be had upon any view which could be properly taken of the facts the evidence tended to establish." Railway Co. v. Cox, 145 U. S. 606, 12 Sup. Ct. 905; Dunlap v. Railroad Co., 130 U. S. 649, 652, 9 Sup. Ct. 647; Kane v. Railway Co., 128 U. S. 91, 9 Sup. Ct. 16; Jones v. Railroad Co., 128 U. S. 443, 9 Sup. Ct. 118. "It is well settled that, where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, and to be settled by a jury; and this whether the uncertainty arises from the testimony, or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them." Railroad Co. v. Powers, 149 U. S. 45, 13 Sup. Ct. 748. These decisions of the supreme court of the United States do not go to the extent of requiring that every conflict in the testimony shall be submitted to the jury. A mere scintilla of evidence is not sufficient to demand such a course. There must be something more than a mere conflict. It must be serious and important. There must be sufficient testimony to support a verdict after allowing the jury to draw all the inferences it could draw justifiably. The verdict should be supported

by such testimony as would sustain the verdict upon any view which might be properly taken of the facts the evidence tended to establish. The case of Goodlett v. Railroad Co., supra, and of Railroad Co. v. Jones, 95 U. S. 439, 443, furnish examples in which courts withdrew causes from the consideration of the jury, or should have done so, notwithstanding there were conflicts in the testimony, but these conflicts did not arise to the dignity and importance necessary to deprive the judge of his right and duty to take the case from the jury.

The question for determination in this case is, ought the case, under the circumstances and facts proven, to have been submitted to the jury, as to whether the pole caused plaintiff's fall, or contributed to that result? In coming to a conclusion as to this, we are to take such legitimate view of the proof as is most favorable to the plaintiff. It is stated in the testimony that the stepping-stone next the pole and the platform were upon the same grade, or nearly so, and upon about the same grade as the surface of the pike between the stepping-stone and the platform; that the distance between the stone and the platform was 33 inches; that the pole with which defendant obstructed plaintiff's pass way was between the stepping-stone and the platform, and was 18 inches in diameter at the point of obstruction. And consequently the plaintiff (a girl 13 years of age) was required, in taking the step to the platform, to raise her foot one foot and a half above the grade of the stepping-stone and surface of the pike and platform, in making the step to the platform. The pole was peeled, and necessarily wet and slippery, and the platform was also wet and slippery. The girl cleared the pole. Such a step as she must have taken was long, awkward to make, and unusual in its character. When she stepped upon the platform with her advanced foot, a jury might reasonably infer that her hindmost foot had left the stepping-stone, for if it had still been placed upon the stone when the foot upon the platform slipped, and she fell, she would have fallen forward or astride the pole, and not backward, and it is not an unreasonable inference that she had to jump or spring so as to clear the log and reach the platform. We do not say that the facts and inferences here given are true. We only say that there is testimony in the record to sustain such a view, while there are other facts and circumstances proven, from which contrary conclusions and inferences may be drawn. It is not our province to venture an opinion as to whether the testimony weighs more upon one side or the other, but we believe that, taking the testimony all together, and looking to the facts, circumstances, and conditions surrounding the transaction, it ought to have been left to the jury to consider and determine whether the pole which obstructed the pass way caused, or contributed to cause, the fall of the plaintiff, and the judge erred in failing to do so. For this error the cause will be remanded, with directions that the verdict and judgment be set aside, and a new trial awarded, and it is so ordered.