## POSTAL TEL. CABLE CO. v. ZOPFI.

(Circuit Court of Appeals, Sixth Circuit. April 14, 1896.)

### No. 351.

NEGLIGENCE—PROXIMATE CAUSE—QUESTION FOR JURY.

One Z. occupied a house fronting on a turnpike. Between Z.'s front gate and the macadamized part of the road was a strip of unpaved, spongy ground, about 10 feet wide, lower than the macadamized road or than Z.'s land, which served as a drain for water falling on the road. Directly in front of Z.'s gate was a small wooden platform, and between this and the road were stepping-stones, used to pass from the road to the gate. The platform and stones were only a few inches above the low ground on which they were laid. The defendant telegraph company, in preparation for erecting a line along the turnpike, caused poles to be dropped, at in-

tervals, in the low ground beside the road. One of such poles was dropped in front of Z.'s gate, with its butt end, measuring 11 inches in diameter, resting on the stepping-stone nearest the platform, in such a position that in order to reach the gate, it was necessary to make a step from the second stone to the platform of about 30 to 36 inches, and high enough to step over the pole. The pole remained in this place for some months. On a rainy day, when the low ground was soft and muddy, and the stones and platform wet and slippery, Z.'s daughter, a girl of about 13, in returning from school, slipped while attempting to step from the stone, over the pole, to the platform, and fell, and was injured. In an action by Z.'s daughter, by her next friend, against the telegraph company, *held*, that it was a question for the jury whether the presence of the pole proximately contributed to cause the accident, and that the defendant was not entitled to a peremptory instruction in its favor.

Error to the Circuit Court of the United States for the Middle District of Tennessee.

Vertees & Vertees, for plaintiff in error.

John Ruhm & Son, James Trimble, and E. L. Gregory, for defendant in error.

Before LURTON, Circuit Judge, SEVERENS, District Judge, and HAMMOND, J.

LURTON, Circuit Judge. This is an action by Emma Zopfi, a minor, suing by next friend, against the Postal Telegraph Cable Company, for personal injuries sustained through the alleged negligence of the company. She obtained a verdict and judgment thereon for $4,000, and this writ of error is prosecuted by the telegraph company for the purpose of reviewing that judgment.

The fourth, fifth, and sixth assignments of error relate to the refusal of the circuit court to grant a new trial, and need not be further considered. The granting or refusal of a new trial is not subject to exception, and cannot be assigned as error. Schuchardt v. Allens, 1 Wall. 370; Cattle Co. v. Mann, 130 U. S. 69, 9 Sup. Ct. 458; Van Stone v. Manufacturing Co., 142 U. S. 128, 12 Sup. Ct. 181; Moore v. U. S., 150 U. S. 57, 14 Sup. Ct. 26.

The third error assigned is that "there was no evidence to sustain the verdict, and therefore the verdict should be set aside." The question sought to be presented by this assignment need not be considered in the form thus presented, for the reason that, at the close of all the evidence, the plaintiff in error moved the court to instruct the jury to return a verdict for the defendant. This motion was overruled, and is made the subject of the first and second assignments of error. It is evident that, if either of the assignments based upon the refusal of the court to instruct for the defendant below is well taken, it will be unnecessary to determine how far plaintiff in error could be relieved from a judgment based on a verdict unsupported by any evidence whatever, where no motion had been made at the conclusion of the evidence for a peremptory instruction. We shall therefore consider the single question as to whether or not the court erred in submitting the case to the jury, and refusing an instruction to find for the plaintiff in error.

Caspar Zopfi, the father of Emma Zopfi, the defendant in error,

and with whom she lived, resided, at the time of the injury to his daughter, about three miles from Nashville, Tenn., on the metaled turnpike road extending from Nashville to Gallatin, in the same state. His place fronted on the pike, and was inclosed by a fence along the margin of the turnpike right of way. Between the gate opening into the yard or lawn of Mr. Zopfi and the metaled part of the turnpike is a strip about ten feet wide, of unpaved, low, spongy ground, lower than the macadamized road, and lower than the inclosed grounds of Zopfi. This border strip operates as a drain for water falling on the pike. In wet weather it is soft and muddy, and water stands in shallow pools. In front of his front gate was a platform about four feet square, made of plank lying on cross boards an inch thick. Between this platform and the metaled part of the pike, at intervals of eighteen inches, flat rocks were laid down for use as stepping-stones in crossing from the platform to the pike. The plaintiff in error, intending to construct a line of telegraph wire along this turnpike, had scattered, at intervals between Zopfi's fence and the metaled part of the public road, telegraph poles, intending at a convenient time to erect them. One of these poles was thrown just in front of the platform at Mr. Zopfi's gate, the heavy butt end immediately in front of the platform. There was evidence that this pole had been in the position described for some months, and was to some extent an obstruction to the easy and safe use of the passway between the traveled pike and Zopfi's premises. There was evidence that this butt end covered one of the flat stepping-stones next the platform, so that the distance between the last exposed stone and the platform was from 30 to 36 inches. There was some conflict of evidence as to the height of the platform above the surrounding ground, the thickness of the obstructing part of the telegraph pole, and the height of the flat stepping-stone from which one would have to step in order to step over the intervening pole to the platform beyond. But, taking the most favorable view of the evidence for the defendant in error, as we must do when we come to determine the question as to whether there was any evidence upon which a jury might reasonably find a verdict for the defendant in error, we may say that there was evidence that both the platform and stepping-stones were not more than from 2 to 4 inches above the low ground on which they were laid. The pole at its butt was, by actual measurement, from 11 to 12 inches in diameter. If, therefore, it lay on top of one of the flat stepping-stones, and these stones were about on a level with the platform, the whole diameter of the pole must have been above the level of the platform. There was evidence to this effect; and we must try this question upon that evidence most favorable for the defendant in error. Upon the day of Miss Zopfi's injury, she was returning from school to her home. The day was wet, and a light rain was falling. Water had settled between the pike and the platform, in part due to the pole having checked the natural drainage. To get into her gate, it was necessary to either go through the mud and water, or use the stepping-stones and the platform at the gate. She took the latter and usual course. In stepping from the last exposed stepping-stone over the pole to the

platform, her foot slipped, and she fell backward on the pole, and sustained very serious and permanent injuries. She says she did not step on the pole, which was a peeled chestnut, and wet. Neither did her foot touch the pole as she stepped over it and onto the platform. But, as she touched the platform, her foot slipped, she lost her balance, and fell.

At the conclusion of all the evidence, the court refused a request to instruct for the plaintiff in error. After telling the jury that, if the presence of the pole in no way caused or contributed to cause the plaintiff's fall, their verdict should be for the company, although they might think that her injury from the fall was aggravated by falling on the pole, the court instructed the jury as follows:

"If the pole caused the fall, or concurred as an operative or producing cause with something else, and proximately produced this injury, the defendant would be liable. You will look to all the testimony, and to the entire situation there, the condition of the weather, and everything else making the complete transaction, and determine what did cause her fall." "If you are satisfied by a reasonable preponderance of the evidence that the pole did cause her fall, or that it occurred with anything else to produce it, the defendant would be liable."

This charge was in accordance with the opinion of this court upon a former appeal in this cause, where a new trial was awarded, because we were of opinion that the court had erred in instructing the jury to find for the present plaintiff in error. Zopfi v. Telegraph Co., 22 U. S. App. 136–143, 9 C. C. A. 308, and 60 Fed. 987.

It is now argued that, upon the facts in evidence, the only legitimate inference to be drawn is that the defendant in error fell alone because she slipped upon the wet platform; that "the wet, slippery platform was the sole cause of her fall; and for that the plaintiff in error is in no wise responsible." It is insisted that this was so plainly and conclusively the only legitimate inference to be drawn from the most favorable view of the evidence which can be taken for the defendant in error that the court should have instructed the jury to find for the plaintiff in error. In support of this position, it has been argued that a conclusion that the pole either caused, or, in co-operation with the wet platform, contributed to cause, her fall, can be reached only by "piling one inference upon another," and that a presumption must be based upon a fact, and not upon an inference or upon another presumption. For this, counsel cite Lawson, Pres. Ev. p. 555; Manning v. Insurance Co., 100 U. S. 698; Douglass v. Mitchell's Ex'r, 35 Pa. St. 440; Pennington's Ex'r v. Yell, 11 Ark. 212; Lay v. Huddleston, 1 Heisk. 172.

Counsel suggest in support of this argument that the steps to be taken in reaching a conclusion that the pole contributed to Miss Zopfi's fall are these:

"(1) Emma Zopfi fell because she slipped. (2) She slipped because she must have taken an awkward, dangerous step. (3) The step must have been awkward and dangerous, because it had to be so very high and long. (4) It must have been so high and long because of the presence of the pole. (5) She would not have been obliged to take such a step if this pole had not been where it was. In no other way [counsel continue] can liability be fixed upon this company upon the facts proven, otherwise than by piling inferences upon

inferences, by giving remote inferences the probative weight of immediate inferences. This cannot be done, because such inferences are not evidence, under the established rule of law."

We cannot concur in this reasoning. Some of the steps suggested are but duplications; others are not presumptions or inferences from inferences, but inferences from facts; and others involve statements of fact, and are not inferences from facts at all. In a chain of reasoning, we may have many inferences which unitedly lead to one end or conclusion. Yet it does not follow that any one presumption or inference was based upon another presumption or inference. Neither does it follow that, because a conclusion is reached as a result of many facts and many independent inferences from proven facts, therefore one inference has been obnoxiously piled upon another. This case presented for the consideration of the court and jury a group of facts and circumstances. That Emma Zopfi had not slipped or tripped on the obnoxious pole was one of the conceded facts of the case. We are asked to infer from this fact that the presence of the obstructive pole in the passway in no way contributed to cause her fall, and to ascribe her misfortune solely to the wet platform. This is to ignore the opposing theory, based upon the entire situation, which is that the step she was required to take was unusually long and high for a 13 year old girl, and may have resulted in a loss of balance as her foot touched the platform, and her consequent slip and fall. That a step fully 33 inches long, and high enough to step over the pole which lay between the stone and the platform, was an unusual and dangerous step for such a girl, is something more than either a presumption or an inference. That it was both unusual and awkward is a fact of which either court or jury may take notice, as within the common knowledge of mankind. That the platform was wet, and therefore slippery, is another established fact; and that her foot was on the platform when she slipped and fell is another. That the wetness of the platform was the sole cause of her fall is the inference plaintiff in error draws, and would have the court so conclusively infer as to leave nothing for the jury to decide. That the wetness of the platform contributed to her loss of balance, her slip and fall, is probable. That it was the sole, efficient cause of her slipping is clearly not the only inference which reasonable men might draw from a consideration of all the facts of the case. To analyze into its possible elements a conclusion that her long and high step over the intruding pole contributed to her slipping and fall as she landed on the platform may be a complicated process, and many men might not satisfactorily state the steps to such conclusion, and might, in the estimation of an acute dialectician, be found guilty of obnoxiously drawing one inference from another. Still, the fact remains that the facts and circumstances were such that either of two inferences might be made,— one that the wet platform was the sole cause of her fall; the other, that the pole proximately and efficiently contributed. in co-operation with the wet platform, to her fall. If the jury should be of opinion from all the facts that but for the pole she would probably not have fallen, then, though the pole was not the causa causans, it would be

a cause without which the fall would probably not have occurred. Upon such a finding, the liability of the plaintiff in error would be clear. McDonald v. Railway Co. (decided by this court April 14, 1896) 74 Fed. 104.

The facts now before us are not in essentials different from those presented on the former appeal. 9 C. C. A. 308, 60 Fed. 987. The case is clearly governed by the opinion then announced, and the judgment is therefore affirmed.