## HERRICK et al. v. QUIGLEY.

(Circuit Court of Appeals, Sixth Circuit. May 8, 1900.)

No. 762.

1. RAILROADS—NEGLIGENCE—PERSONAL INJURY TO EMPLOYE—PROXIMATE CAUSE—EVIDENCE—QUESTION FOR JURY.

Plaintiff's intestate, who was employed as switchman in defendant's yard, having occasion to couple two cars, on one of which the drawbar was higher than on the other, making it difficult to couple the same with a straight link, went in between the cars, and, having completed the coupling, attempted to step out from between the cars onto the planking in the highway crossing, but the planks were so uneven that his foot caught or slipped thereon, and he was thrown under the cars. As he slipped, decedent grasped the grab iron, and endeavored to jump out from under the car, and was about to accomplish this, when his foot slipped into a hole between the ends of two ties, and he was run over by the cars and killed. *Held*, that the court properly left it to the jury to determine whether the condition of the plank at the crossing was the proximate cause of the injury.

2. SAME—CONTRIBUTORY NEGLIGENCE—COUPLING MOVING CARS—INSTRUCTIONS.

There being evidence that the deceased had succeeded in making the coupling, and would have stepped out from the moving train but for the presence of the upturned plank, upon which he stumbled and partially fell, and there being no proof tending to show that deceased knew of, or had reason to anticipate, the defect in the crossing, the court properly left it to the jury to determine whether the intestate was guilty of negligence that contributed to the injury, under an instruction that, if deceased knew of the defect in the crossing, and that it was more dangerous to couple moving cars under such circumstances, and had power to cause the cars to come to a stop before making the coupling, and, notwithstanding such knowledge, made the coupling while the cars were moving, he was guilty of contributory negligence, and his representatives could not recover.

3. SAME—REPAIR OF CROSSING—NOTICE OF DEFECTS.

It appearing that the crossing where plaintiff's intestate slipped had been out of repair for some time prior to the accident, the court properly left the question of defendant's negligence in that regard to the jury, under an instruction that it was the duty of defendant to keep the crossing in a reasonably safe condition for the use of its employés, and that, if it had been out of repair for several days before the accident, and defendant's attention had been called to it, and it failed to repair it, the company would be guilty of negligence.

4. SAME—CITY ORDINANCE—DEFENSE.

Defendant having put in evidence a city ordinance prohibiting it from using the crossing where plaintiff's intestate was injured for the storage of cars, and from permitting loaded and unloaded cars to stand thereon, the court properly instructed the jury that defendant could not plead its obligation thereunder as a defense to an action for an injury to one of its employés, caused by its failure to keep the crossing in repair.

5. TRIAL—INSTRUCTION AS TO VERDICT.

A charge to the jury that, if they find on the issues therein in favor of the plaintiff, the court would "accept a reasonable and fair verdict as a proper settlement of the controversy," while possibly prejudicial to the plaintiff, is not open to objection by defendant as taking from the jury

···· their power to pass upon the facts in the case under the instructions of
the court.

In Error to the Circuit Court of the United States for the Western ·
Division of the Northern District of Ohio.

This action was prosecuted by Mary Quigley, administratrix of the estate
of Thomas Quigley, deceased, against the receivers of the Wheeling & Lake
Erie Railway Company, to recover for injuries resulting in the death of
Quigley because of the alleged negligence of the defendants. Quigley had been
in the employ of the railway company as a switchman or pony conductor for
a number of years; his duties requiring him to switch the cars in and about
the yards of the company at Toledo. The accident which resulted in his
death occurred on the tracks of the company across Summit avenue in the
city of Toledo. The use of this avenue had been granted upon certain con-
ditions by the city of Toledo to the company of which the defendants were
receivers. Summit avenue extends in a northerly and southerly direction,
and is said to be about 92 feet wide. Along the westerly side thereof is a
sidewalk about 6 feet wide. East of and near said sidewalk there is a ditch
or trench. Across Summit avenue were located two tracks of the Wheeling
& Lake Erie Railway Company, the northern track being connected with other
·tracks extending into and constituting what is known as the "Manhattan
Yard." A crossing at Summit avenue had been constructed of plank, consist-
ing of two planks laid parallel to the rails. The allegations of the petition,
so far as it is necessary to recite the same, set forth that on the 29th day
of January, 1898, the receivers were operating a yard containing a number
of tracks, in which Quigley was employed as switchman, his duty requiring
him to make up trains, coupling and uncoupling, and switching cars. It is
alleged that the duty of the receivers required them to construct at the place
where the tracks above mentioned intersect said Summit avenue a good and
sufficient crossing, and to maintain the same in good condition; that the said
defendants allowed one of the planks of said crossing to become loosened,
so that one side thereof projected over and above the other planks of said
crossing, rendering the same dangerous to the men who had to switch cars
over the same; all of which was known, or should have been known, to de-
fendants, but was not known to Quigley, who did not have equal means with
defendants of knowing of such defective condition. It is further alleged that
it was the duty of the defendants to fill the open space between the ties pro-
jecting outside of the rails in said yard, and thereby protect their employés,
·when switching, coupling, and uncoupling cars, from having their feet caught,
and being thereby injured. At the Summit avenue crossing on the north
side of the track the defendants had permitted the space between the ties to
remain open; had further permitted a trench or hole of the depth of about
·two feet or more to remain at the end of said ties, rendering the employment
·of the switchmen dangerous; all of which was known, or should have been
known, to said defendants, but was unknown to decedent, who did not have
equal means with defendants of knowing of said defect. The petition further
alleges that in coupling cars the employés are required to give their entire
attention to what they are doing, and that, if one drawbar is higher than the
·other, the coupling is extremely dangerous, requiring care and skill. It is
alleged that on the 29th of January, 1898, said Quigley was required, in the
discharge of his duties, to couple a number of freight cars, to which an en-
gine was attached, to another freight car, which was at the time standing
on the side track at or near the crossing of said Summit avenue; that the
drawbar ir one of said cars was about four inches higher than that of the
other, thereby rendering the act of coupling them exceedingly dangerous and
difficult; that, as the cars came together, Quigley attempted to make the coup-
ling, and after great difficulty succeeded in doing so while the cars were
in motion, and then attempted to step out from between the cars, but, owing
to the dangerous and defective condition of the crossing, Quigley slipped on
the broken plank, and, in order to save his life, attempted to catch hold of
the handholds on the side of the cars, but failed, and then attempted to throw
himself out from between the cars, but by the time he had to a certain ex-

tent recovered himself, and was about to escape from the peril and danger in which he was placed, the cars, which were in motion, had reached the point on the track where the ends of the ties projected over the said hole or trench, where the open spaces between said ties were unfilled, and that in attempting to throw his foot out and step outside of the track he fell into the hole and space between the ends of the ties, and was killed by one of the cars. The defendants, in addition to pleading substantially the general issue, set up that the injury to decedent was the result of his own negligence. At the trial, the judge, in charging the jury, said: "The facts, as shown by the plaintiff's evidence, are: The decedent was the conductor in charge of said train, and that, having occasion to couple two gondola coal cars, on one of which the drawbar was higher than on the other, making it difficult to couple the same with a straight link, he went in between the cars, and with his left hand undertook to change the link so as to make the coupling easier, and, having about completed it, he attempted to step out from between the cars on the planking in the highway crossing, which planks were so uneven that the decedent's foot caught or slipped thereon, and he was thrown under the cars. As he slipped and was about to fall, he grasped the grab iron, and pulled or dragged himself along in an attempt to gather himself, and made a strong effort to jump out from under the car. As he was about to accomplish this, his foot slipped down into a ditch or hole across the defendants' tracks, between the ends of two ties, and he was then thrown or drawn underneath, and the car wheels ran over him, breaking his arm and crushing his skull. The claim on behalf of the plaintiff is that this would not have happened but for the negligent and defective condition of the planking at the highway, and more particularly if this hole or ditch across the track into which his foot slipped had not been allowed to exist. It is contended on behalf of the defendant that the decedent had been for some considerable time in the employ of that company, knew the location of these switches, side tracks, and street crossing, and, being the conductor of the train, had the right to choose his own time, place, and manner of making this coupling; that if he found it more hazardous, on account of the cold weather and slippery condition of the roadbed, it was his duty to protect himself, and to protect the company from loss growing out of injury, by having the engineer stop until he could rearrange the drawbars or the link, and make the coupling while the cars were standing still; and that it was negligence on his part in undertaking to walk between the moving cars while the coupling was going on. There is some, conflict in the testimony as to how rapidly the cars were moving when he was in between, one witness stating the cars moved faster than he was walking."

Julian H. Tyler, for plaintiffs in error.

Harold W. Fraser, for defendant in error.

Before LURTON and DAY, Circuit Judges, and SEVERENS, District Judge.

DAY, Circuit Judge, after thus stating the case, delivered the opinion of the court.

One of the principal assignments of error is that the court erred in stating the facts as shown by plaintiff's evidence as above set forth. We have carefully examined the record, and are of opinion that the court did not unfairly put the case as developed in the testimony. Upon the facts established it is argued that the court should have sustained the motion to take the case from the jury by a peremptory instruction to return a verdict for the defendants. In order to reverse the case upon this ground, it must appear that the case was so palpably for the defendants as to require this instruction. The rule upon this subject was so recently restated in the case of Insurance Co. v. Thornton, 100 Fed. 582 (decided

by this court March 19, 1900), that it need not be repeated. In support of the contention that the court should have so instructed the jury it is urged that the condition of the plank in question was not the proximate cause of the injury, and that the injury, if chargeable to the defendants at all, resulted from the falling of the decedent into the ditch or trench, some distance from the crossing, where the ends of the ties were left uncovered. The court eliminated consideration of this open space between the ties as an independent ground of recovery in the case in its charge to the jury, and left them to determine whether the condition of the plank was the proximate cause of the injury. The following is the charge of the court upon this branch of the case:

"It is contended on behalf of defendants' counsel that, even conceding a faulty condition of the crossing over this highway, it was not the proximate cause of the injury, and therefore not such negligence as would make the defendants liable. The rule is well settled that the plaintiff cannot recover except for what is called the proximate or immediate cause of the injury, and that remote causes do not constitute such negligence as would make the defendants liable. In this case it is a question for you to determine, gentlemen, where the injury occurred, and whether, considering where it occurred, it was the proximate and direct cause of the negligence on the part of the railroad company. The whole unfortunate accident took place within a few seconds, as stated by most of the witnesses. The petition avers that the decedent, after he had perfected the coupling of the cars, had his foot caught on this defective planking, but that he had about recovered himself from stumbling on this defective planking, so far as that part of the accident is concerned, and would have probably righted himself, and been able to throw himself out from the cars, if it had not been for the hole between the ties, into which his foot finally went, and from which he was unable to extricate himself. The contention by the defendants is that this hole, being the last place where he was caught, was the proximate and direct cause of the injury, and that the slipping and falling on the crossing cannot be considered as the negligence which caused the injury. That is a question of fact for you, gentlemen of the jury, to determine under the instructions I have given you as to proximate cause, and under the facts as they have been stated to you; and it will be very important for you to consider closely the facts which bear on this part of the case, because it is the only negligence charged for which the defendants would be liable. Defendants' counsel also contend that the defendants were not guilty of negligence because of not having the side track at this point fully ballasted. That is true, gentlemen. The side tracks are not used for the same purpose as the main tracks. Trains do not move so fast upon them, and in every respect more caution is to be exercised when side tracks are used. It is only necessary that the company should have them safely ballasted, so they will meet the purposes for which they are generally used, and be in a reasonably safe condition."

The verdict establishes that under this charge the jury must have found that the upturned plank was the proximate cause of the injury, and we think the testimony was such that the court was warranted in submitting that question to the jury. There was testimony tending to show that the decedent had made the coupling, or had practically accomplished this purpose, when he came upon the upturned plank where his foot was caught, and he stumbled, and partly fell, and was in the effort of recovering himself, when he came upon and over the uncovered ends of the ties above the ditch, where, his efforts proving fruitless, he was precipitated beneath the cars. Assuming, without now deciding, that the court

correctly charged the jury that the company was not compelled to fill up the space between the ties at this point as a duty owing to the decedent, can it be said that this condition was the cause of the injury in such sense that the accident must be attributed thereto, and the previous stumbling and the defective crossing eliminated as producing causes of the injury? What constitutes proximate cause and the effect of intervening or independent causes between the negligent conduct of defendant and injury to plaintiff was the subject of consideration by the supreme court of the United States in Railway Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256, in which case the opinion is by Mr. Justice Strong. At page 474, 94 U. S., and page 259, 24 L. Ed., the learned justice says:

"The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or as in the oft-cited case of the squib thrown in the market place. Scott v. Shepherd, 2 Black, 892. The question always is, was there an unbroken connection between the wrongful act and the injury,—a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances. * * * We do not even say that the natural and probable consequences of a wrongful act or omission are in all cases to be chargeable to the misfeasance or nonfeasance. They are not when there is a sufficient and independent cause operating between the wrong and the injury. In such a case the resort of the sufferer must be to the originator of the intermediate cause. But when there is no intermediate efficient cause the original wrong must be considered as reaching to the effect, and proximate to it. The inquiry must, therefore, always be whether there was any intermediate cause disconnected from the primary fault, and self-operating, which produced the injury. Here lies the difficulty. But the inquiry must be answered in accordance with common understanding. * * * In the nature of things, there is in every transaction a succession of events, more or less dependent upon those preceding, and it is the province of a jury to look at this succession of events or facts, and ascertain whether they are naturally and probably connected with each other by a continuous sequence, or are dissevered by new and independent agencies; and this must be determined in view of the circumstances existing at the time."

McDonald v. Railway Co., 20 C. C. A. 322, 74 Fed. 104; Zopfi v. Cable Co., 9 C. C. A. 308, 60 Fed. 987.

In the light of these authorities and the testimony in the present case, we do not think the court erred in submitting to the jury the question of proximate cause. We cannot review the weight of the testimony nor the correctness of the finding of the jury. It is sufficient, if there was evidence upon which the case ought properly to be submitted to the jury. The testimony tended to show that, after the stumbling upon the upturned plank in the defective crossing, the decedent never succeeded in recovering himself. He was making every effort to do so, but did not succeed. Perhaps the weight of

·the testimony may be said to be that from the time · of · the first stumbling Quigley was exerting all of his strength and activity to recover himself. There is nothing in the case tending to show th𝑒ᷓ · the ditch or open space between the ties would have had any effᷓᶜᵗ upon Quigley, independent of the slipping and stumbling upon tᴉ e defective plank. From the situation in which he was placed bᷓe- cause of that defect he never recovered, and was finally precipitatᷓd beneath the wheels. Under instructions which we think were suᵱi- ciently favorable to the defendants, the jury must have found that .the defective plank was the real and substantial cause of the injury, and that there was no "intermediate cause disconnected from the primary fault, and self-operating, which produced the injury." We find no error in the action of the court submitting this question to the jury under the. instruction given.

It is further claimed in argument that the testimony showed that the court should have directed a verdict for the defendants because of the contributory negligence of the decedent. In the view we take of the case, we do not think it necessary to determine whether it would have been contributory negligence, as matter of law, to have undertaken to make the coupling while the cars were moving with- out signaling the engineer to stop, or taking other precautions for his safety on part of decedent. The court left this question to the jury in the following language:

"On this charge of contributory negligence the court says that it was the decedent's duty to have made that coupling in the way least hazardous. If he was aware that the tracks at that point were covered with ice and snow, and knew it was more dangerous to couple moving cars under such circumstances. he not only had the power and authority to move the train slower, but could have come to a full stop; and it was his absolute duty to do so in order to protect his own life, and thereby protect the defendants' company from loss. If you find he undertook to make that coupling while the cars were moving, and by so undertaking to make it, under the circumstances then existing, made the coupling more hazardous than ordinary, and that he could have con- trolled the movement of the train, and made the coupling at a point and in a manner that would have been absolutely safe; and if you further find that he knew of these dangerous places as to the planks on the highway and the ditch across the track,—then the court says to you he was guilty of contributory negligence, and cannot recover. Even though the defendant company was guilty of negligence, yet, if the injury would not have happened but for the decedent's own negligence, his representatives cannot recover in this action. It will be your duty to consider that this accident happened in broad daylight, on what is called a bright winter day, and at a place familiar to the decedent. The conductor of such a train has absolute control, not only of the movement of the train after it is made up, but he has control of the making up of the train in the yards; and under the conditions disclosed by this case the whole proceeding from beginning to end was absolutely under the control of decedent; and if you find he performed his duty there under such circumstances and in such a manner as made the injury probable, when by his own acts he might have made it almost impossible, the company has a right to plead such acts and such want of care on his part as contributory negligence, and the court charges you that it is contributory negligence,—that it is a defense which the defendants are entitled to make, and the court enforce."

We think this charge quite as favorable as the defendants could have asked. There was testimony in the case tending to show, as we have already stated, that Quigley had succeeded in making the coupling, and would have stepped out from the moving train but for

the presence of the upturned plank, upon which he stumbled and partially fell. There are cases holding that unnecessarily undertaking to couple moving cars, where another and safer method is open to the employé, is negligence per se. But in this case there was testimony to show the unlooked-for and independent agency of the upturned plank as the immediate cause of the injury. In the case of Railway Co. v. Craig, 19 C. C. A. 631, 73 Fed. 642, it was said:

"Where a switchman was injured by catching his foot in an unblocked frog while uncoupling moving cars, held, that the question whether the danger from the frog was so substantially different in character from the danger of slipping or of tripping upon the ties or cross rails as to prevent his original negligence in going between the cars from being the proximate cause of his injuries was a question for the jury."

In this case, in view of the testimony adduced, we think it was properly a question for the jury as to whether the contributory negligence of the decedent was the cause of his injury. In the case of Gleason v. Railway Co., 19 C. C. A. 636, 73 Fed. 647, it was said:

"The accident happened by reason of an unblocked frog, the presence of which the plaintiff had no reason to suspect. It was held that the question of proximate cause in that case was a question for the jury, because the jury might there have reasonably found that the trap-like character of the unblocked frog was such a new, independent, and unexpected cause of the accident as to break the chain of legal causation between the plaintiff's negligence in stepping in between moving cars and the injury which did occur from the unblocked condition of the frog."

There was no proof in the case tending to show that Quigley knew of, or had reason to anticipate, the defective plank in the crossing. It is entirely probable that without this defective plank he would not have been injured. It is a familiar rule of law that contributory negligence which will bar a recovery must directly contribute to the injury. The jury found, undoubtedly, under the instruction of the court, that whatever negligence there might have been in passing between the cars would not have injured plaintiff's intestate but for the presence of this, to him unknown and unexpected, defect in the crossing. The duty of the railway company to maintain this crossing in a reasonably safe and proper condition was determined in the case of Railway Co. v. Keegan, 31 C. C. A. 255, 87 Fed. 849. In that case it was decided that, where a railway company has undertaken to lay planks between the rails of the tracks, the work must be done and maintained in such a way as to be reasonably safe for persons rightfully upon the tracks and in the exercise of due care. The testimony as to the length of time this crossing had been out of repair differs, but it does appear that it had been in that condition for some time, so that the question of responsibility of the defendants could be properly submitted to the jury. The court, upon that subject, left the matter fairly to the jury in the following instructions:

"As to the negligence of the defendant company in keeping the planking at the highway crossing in the condition claimed by the plaintiff, I desire to say to you, gentlemen, that it is the duty of the defendants to keep the highway crossing reasonably safe for the use of the public upon the highway, and also in a certain measure for the protection of the employés of the railroad. In this case, if you find the planking was in a dangerous condition, it will not

necessarily follow that the defendant company is responsible for that negligence, under all circumstances. If the planking was put down in a safe and proper manner and became suddenly warped out of place by frost or some such agency, and the company had no notice of it by or through its employés, using ordinary diligence, such as section foremen or track men, then the defendants would not be liable for such condition; but if the condition had existed there for several days, and their attention was called to it, and the defendants failed to repair it, they would be guilty of negligence. Still, if the decedent knew or had the means of knowing the roadbed at that point was in that condition, then he cannot recover, because it was his duty to report that fact to the defendants, and give them an opportunity to repair it, if he knew it existed."

At the trial an ordinance of the city of Toledo was put in evidence, in which it is shown that the city, in granting the railroad company the right to use Summit avenue, provided that the "tracks, turnouts, side tracks, and switches on or across any street, avenue, or alley shall not be used for the storage of cars, nor shall loaded or unloaded cars be permitted to stand thereon." It does not very clearly appear just what the plaintiffs in error claimed from this ordinance. Counsel say of it:

"The ordinance embodying this grant was not offered in evidence as an absolute defense precluding the plaintiff below from recovery, but as a circumstance bearing upon the question whether the plaintiffs in error were negligent. If the tracks were, by the city, permitted to be constructed across · the street upon the express condition that they should not be used except for the transportation of cars over the same, the defendants below, in the absence of knowledge to the contrary, would not be bound to anticipate some other use, which might require a method of construction and maintenance different from that by them adopted."

On this subject the court below charged the jury as follows:

"A good deal has been said by counsel for the defendants about the grant of the right of way to the railroad company by the city of Toledo, and that it provided that the railroad should not allow the storing or coupling of cars on street or highway crossings. That is good as between the parties to it, but the company cannot plead such obligation as a defense to a suit by an employé where negligence is charged. The employé would not be thus barred in the suit of his own against the company, where the injury was the result of the company's own carelessness; and this ordinance should not be pleaded as a defense in this action."

There is nothing in the record tending to show that Quigley was not properly attending to his duties, or violated any rule or instruction of the company in switching cars at the crossing in the manner he did. We do not understand that the fact that the company was violating an ordinance by having cars upon the crossing could relieve it from maintaining the crossing in a reasonably safe condition when used by employés as this one was. We find no error in the court's instruction in this behalf.

It is finally argued that the trial court erred in saying to the jury, "If you find on the issues here in favor of the plaintiff, the court will accept a reasonable and fair verdict as a proper settlement of this controversy between the parties." While it is not apparent that the jury had anything to do with the question whether the court would or would not accept their verdict, we do not find anything in this instruction which took from the jury their power to pass upon the facts in the case under the instructions of the

court. If it had a tendency to curtail freedom of action on the part of the jury, it might possibly be prejudicial to the plaintiff below, as an intimation that only a reasonable and fair verdict would be accepted by the court. A careful review of the record in this case leads us to the conclusion that it was fairly tried, and that no, substantial error interven^d to the prejudice of the receivers. The judgment of the court below will be affirmed.