LAKE ERIE & W. RY. CO. v. CRAIG.

(Circuit Court of Appeals, Sixth Circuit. January 30, 1896.)

No. 374.

1. MASTER AND SERVANT—PERSONAL INJURIES—UNBLOCKED RAILWAY FROG.

Failure of a railroad company to block a frog in its yard, in violation of a statute (Act Ohio, March 23, 1888), does not prevent the company from escaping liability to an employé injured in such unblocked frog, on the ground of contributory negligence. Krause v. Morgan (Ohio Sup.) 40 N. E. 886, followed.

2. SAME—PROXIMATE CAUSE—QUESTION FOR JURY.

Where a switchman was injured by catching his foot in an unblocked frog while uncoupling moving cars, held, that the question whether the danger from the frog was so substantially different in character from the danger of slipping, or of tripping upon the ties or cross rails, as to prevent his original negligence in going between the cars from being the proximate cause of his injuries, was a question for the jury, and that it was error to charge that he could not be found guilty of contributory negligence with respect to the injury caused by the frog, unless he knew, or ought to have known, that the frog was unblocked. Smithwick v. Hall & Upson Co., 21 Atl. 924, 59 Conn. 261, distinguished.

3. SAME—CONTRIBUTORY NEGLIGENCE—UNCOUPLING MOVING CARS.

A court cannot say, as matter of law, that it is not negligence for a switchman, who might have pulled the coupling pin while the cars were standing still, to wait until they have attained a speed of five miles an hour, and then step in between them, on a dark night, when the ground is frozen and likely to be slippery, with snow upon it, at a point where the tracks interlace, and the ties rise above the level of the roadbed.

In error to the Circuit Court of the United States for the Western Division of the Northern District of Ohio.

This is a writ of error brought to review the judgment of the circuit court for the Northern district of Ohio in a suit brought by Frank B. Craig, defendant in error, to recover damages for personal injuries from the Lake Erie & Western Railway Company, plaintiff in error. The judgment was in favor of Craig, for $12,000. Craig was conductor or foreman of a night switching crew in the yards of the railway company at Lima, Ohio. He had been in the employ of the company for nearly three years prior to the accident, in various capacities,—chiefly as brakeman upon a freight train. His service as conductor or foreman of the switching crew in the yards of the company at Lima began on the 16th of December, 1892, and the accident upon which this action is founded occurred on the 20th of the same month. The switching crew, which consisted of Craig himself, two switchmen, the engineer and the fireman of the locomotive, had completed their work about 4 o'clock in the morning, had washed themselves, and were waiting until 6 o'clock should arrive, when their duties would end. They received an order to switch two cars,—one to one train, and one to another,—which, coming at this late hour, put them in bad humor. The two cars to be switched were attached to the front end of the engine, and the engine was backed north on the main track in the Lima yard to what was called the switch into the B track. There was a slight grade from the center of the yard down to the switch. The grade from the switch north on the main track was also downward, though upon this point there was a conflict of evidence. As

the train backed down on the main track, beyond the switch, Craig stepped off on the east side of the main track, about opposite the switch point, and waited until the train had passed beyond the switch. One of his switchmen turned the switch, and then Craig gave the swift signal to kick the car hard up the B switch. The engineer obeyed the signal, and pushed the cars up the B. switch. Craig stepped in between the first and second cars as they went by him, to pull out the coupling pin. He succeeded in doing this, but fell and was run over. His legs were so mangled that both had to be amputated. He was found lying under the fire box of the engine. The contention for the plaintiff was that Craig had caught his foot in a frog which was unblocked, in violation of the statute of Ohio, and that this was the cause of the accident. The evidence was very conflicting as to whether the frog was blocked or not. There was some conflict of evidence, also, as to the speed of the train at the time that Craig entered between the cars. Craig himself said that the speed was from three to four to five miles an hour. Other witnesses said that the speed was from four to five miles an hour. The engineer testified that Craig had given him a swift signal,—that is, a signal for a hard kick,—and that the speed was about ten miles an hour. His fireman, however, thought that it was about five miles an hour. The night was cold. The ground was frozen. The roadbed about the switch was usually moist, when not frozen. There was some snow on the ground. It was quite dark. The rule of the company forbade brakemen and switchmen to enter between cars in motion, to uncouple them. This rule was upon a time card furnished by the company to Craig. It was in evidence that the rule was generally not observed in the Lima yard, and that the violations of the rule were known to the division superintendent and the yard master. The division superintendent admitted upon the stand that the rule was not always observed, but stated that he had cautioned the men against entering between the cars when they were moving too rapidly, and advised them against their taking such risks. It was also in evidence that it was the general custom on railroads to uncouple cars in this way. The learned judge who presided at the circuit told the jury that the single question before them was whether Craig had been injured by getting his foot in the unblocked frog; that if he went in between the cars, knowing that the frog was unblocked, he was guilty of contributory negligence, and could not recover. The court further told the jury that if Craig did not know, or might not, by reasonable care, have known, that the frog was unblocked, there was no other question of contributory negligence in the case, and that even if Craig had been negligent in going in between the cars, because of a possible danger of falling, such negligence would not prevent his recovery for an accident happening by reason of the unblocked frog, because it would not be the proximate cause of the injury.

J. B. Cockrum, W. H. Miller, and Doyle, Scott & Lewis, for plaintiff in error.

King & Tracy and Cable & Parmenter, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

TAFT, Circuit Judge (after stating the facts as above). The liability of the defendant railway company was asserted by the plaintiff on the ground that it had failed to block a railway frog in its yard at Lima, in violation of a statute of Ohio passed March 23, 1888 (85 Ohio Laws, 105), requiring all railway corporations operating railways in the state to block or fill such frogs, for the safety of their employés, and imposing a punishment for failure to do so. We have already held, in Railroad Co. v. Van Horne, 16 C. C. A. 182, 69 Fed. 139, that the effect of this statute is to make a failure by a railroad company to comply with it negligence, as matter of law. This is the ruling of the supreme court of Ohio in construing an

analogous statute enacted to compel mine owners to adopt safety appliances for their employés. Krause v. Morgan (Ohio Sup.) 40 N. E. 886. The statute does not, however, prevent the master, in such cases, from escaping liability, if the employé injured by the master's noncompliance with the statute is himself guilty of contributory negligence. This is expressly ruled by the supreme court of Ohio in the case cited, where, after an elaborate review of the authorities in other states, Judge Speer, speaking for the court, sums up its conclusions as follows:

"While the statute, as we construe it, does not make the operator of the mine absolutely liable to a party injured by an explosion of gas, where the operator has not complied with the statute, such conduct is negligence per se; and the employer cannot escape liability by showing that he took other means to protect the workmen, equally efficacious. Proof of failure to obey the statute is all that is necessary to establish negligence on the part of the operator, but the statute does not change the well-established rule that, where one has been guilty of negligence that may result in injury to others, still the others are bound to exercise ordinary care to avoid injury."

This was the view which the trial court took of the statute, and it was correct.

The only material question presented on this record is whether the trial court erred in its ruling that unless Craig knew, or ought to have known, that the frog was unblocked, he could not be guilty of negligence contributing to an injury occurring to him by catching his foot in the unblocked frog. The court below held that if Craig got his foot in the unblocked frog, without knowing that the frog was unblocked before he went in between the cars, his negligence in going in between the cars, however great, would not, in law, contribute proximately to the injury. We cannot concur in this view. If the circumstances under which he went in between the cars to do the uncoupling were such that he might reasonably have anticipated falling or tripping over the crossrails, or the heavy crossties which projected above the ground to support the switch, or upon the slippery ground, we think it would not have been unreasonable in the jury to find that his falling by reason of being caught in the frog was so similar in its character as to connect his negligence in going between the moving cars with the accident, as the causa causans. A fall from any cause, while he was between the cars moving at the rate of five miles an hour, would be most likely to result in serious injury to him, and to bring some part of his body under the wheels of the car. It might not have been necessary, to cause the accident which happened, that his foot should have been so fixed in the jaws of the frog that he could not remove it without effort. It might have been quite sufficient that he tripped against the frog, or caught his toe in it but temporarily, to have caused the injury in this case. In other words, any other possible obstruction in the roadbed, or reason for falling, might have caused the same accident in the same way. In this view, though Craig did not know that the frog was unblocked, and had no reason to know it, the jury might still have found, with reason, that he should have anticipated the presence of something upon the roadbed operating in substantially the same way to cause the accident which happened. Let us put an extreme

case, for the purpose of illustration: Suppose that a man upon the highway near a railroad crossing saw a train approaching at a very rapid rate, and, instead of waiting until it should pass, recklessly attempted to cross in front of it, and that, in jumping before the engine, he caught his foot in an unblocked frog, which he did not know, and had no reason to believe, was there, and that he was thus run down and killed; could it be said, as matter of law, that his wanton exposure to danger, in jumping before the rapidly approaching train, was not a direct and immediate cause of his death? Would it not at least be a question for the jury to say whether his negligence was a proximate cause? In Railway Co. v. Kellogg, 94 U. S. 469, Mr. Justice Strong, speaking for the supreme court, said:

"The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science, or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or as in the oft-cited case of the squib thrown in the market place. 2 W. Bl. 892. The question always is, was there an unbroken connection between the wrongful act and the injury,—a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held that in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen, in the light of the attending circumstances. * * * But when there is no intermediate, efficient cause, the original wrong must be considered as reaching to the effect, and proximate to it. The inquiry must therefore always be whether there was any intermediate cause, disconnected from the primary fault, and self-operating, which produced the injury. Here lies the difficulty. But the inquiry must be answered in accordance with common understanding. In a succession of dependent events, an interval may always be seen, by an acute mind, between a cause and its effect, though it may be so imperceptible as to be overlooked by a common mind. * * * Such refinements are too minute for rules of social conduct. In the nature of things, there is in every transaction a succession of events more or less dependent upon those preceding; and it is the province of a jury to look at this succession of events or facts, and ascertain whether they are naturally and probably connected with each other by a continuous sequence, or are dissevered by new and independent agencies, and this must be determined in view of the circumstances existing at the time."

The question here is whether the intervention of the unblocked frog was so new and independent a cause of the injury, as distinguished from the original negligence of Craig in going between the moving cars, that it was the sole, proximate cause. Much reliance was placed by the defendant in error on the case of Smithwick v. Hall & Upson Co., 59 Conn. 261, 21 Atl. 924. In that case a workman had been warned not to go to the end of an unfenced platform, because of the danger of slipping on the ice which was there, and falling off to the ground below. He went there nevertheless, and while there the wall of an adjacent building fell on him, and he was injured. The supreme court of errors of Connecticut held that his negligence in not heeding the warning was not contributory to

the injury which happened to him. The case is easily distinguished from the one at bar. There the injury which happened proceeded from a manifestly different cause from that which the plaintiff had been warned against, and, while he might have assumed the risk from the one, he did not assume the risk from the other. Here, if the jury were to find that the accident, as it happened, by the catching of the foot in the frog, was entirely different in its character from that which the plaintiff might have expected by falling over any obstruction, or by slipping, they would be at liberty to do so, and to find that his negligence in going between too rapidly moving cars was not a proximate cause of the accident. All that we hold is that the jury might reasonably have found, from the evidence in this case, that the danger from the frog was not substantially different from the dangers which he had reason to anticipate, and, therefore, that his negligence did contribute to the accident, as a proximate cause. Hence the question of proximate·cause should have been submitted to the jury.

2. It is also urged in support of the charge below that there was no evidence to sustain the contention that the plaintiff's going in between the cars was negligence. There was a rule of the company which forbade it. It was in evidence that this rule had been more or less disregarded, and that the division superintendent was aware of it. He himself stated that he had seen switchmen enter between moving cars, and had only warned them against taking the risk of going in between the cars when they were moving too rapidly. If this was all the evidence, the court might perhaps have held that the rule had been abrogated; though ordinarily, when a rule is formally adopted, its abandonment by matter in pais is a question for the jury. But, the rule aside, there was evidence which should have been submitted to the jury on the question of Craig's negligence. The engineer testified that the train was going at ten miles an hour, and the other witnesses testified that it was going about five miles an hour. Assuming, for the purpose of the argument, that we might reject the evidence of the engineer as too slight for consideration, we do not think the court is able to say, as matter of law, that it was not negligence for a switchman, who himself admits that he had the opportunity to pull the pin while the cars were standing still, to wait until they had attained a speed of five miles an hour, and then to step in between them, on a dark night, when the ground was frozen and there was snow upon it, at a point where the tracks interlaced, and where the ties rose up above the level of the roadbed, and where the usually moist ground, in a frozen condition, was likely to be slippery. Five miles an hour is a very fast walk, and approximates, in ordinary persons, the speed of a trot. It is in evidence, and it is not denied, that, just before going between the cars, Craig gave the swift signal to the engineer, which means a hard kick of the cars. The jury might reasonably say that, where such a hard kick was necessary, it was the duty of the switchman, if possible, to avoid stepping in between the cars, under the circumstances, to uncouple them, when he might have done this just as well with the cars standing still. Evidence of the existence of

a general custom of uncoupling cars when in motion was introduced. It is not necessary for us to consider the competency of such evidence. Suffice it to say, it did not show what was the customary speed of the train when the uncoupling was done. Nor could it be regarded as conclusive on the question of negligence. It was, at most, but a circumstance for the consideration of the jury. A verdict based on the negligence of Craig in uncoupling as he did could not be set aside for insufficient evidence. The judgment of the court below is reversed, with directions to order a new trial.