NARRAMORE v. CLEVELAND, C., C. & ST. L. RY. CO.

(Circuit Court of Appeals, Sixth Circuit. July 5, 1899.)

No. 677.

1. MASTER AND SERVANT—ASSUMPTION OF RISK BY SERVANT.

In the absence of statutory provision, a switchman employed in the yards of a railroad company assumes the risk incident to unblocked switches and guard rails, where, in general, there are no blocks used in such yards, and the servant has been employed therein for such a length of time that in the exercise of ordinary observation he must have known such fact.

2. SAME.

The doctrine of the assumption of risk by a servant is that it is a term of the contract of employment, express or implied, and no right of action accrues to the servant for an injury due to such risk, because, under the contract, the master has violated no legal duty in failing to protect the servant from dangers the risk of which he agreed to assume.

3. SAME—FAILURE OF RAILROAD COMPANY TO BLOCK SWITCHES — EFFECT OF OHIO STATUTE.

The purpose of the Ohio act of March 23, 1888 (85 Ohio Laws, p. 105), requiring railroad companies to block the frogs, switches, and guard rails on their tracks, under penalty of a fine, was to protect employés of such

companies from a well-known danger of their service, the risk from which, from the nature of their employment, they were compelled to assume; and although an employé impliedly waives a compliance with the statute, and agrees to assume the risk from unblocked switches and guard rails, by continuing in the service without complaint, a court will not recognize or enforce such agreement. The imposition of a penalty for a violation of the statute does not exclude other means of enforcement; and to permit a company to avail itself of such an assumption of risk by its employés is, in effect, to enable it to nullify a penal statute, and is against public policy: The assumption of risk by the employé, however, which is a matter of contract, is not to be confused with contributory negligence.

In Error to the Circuit Court of the United States for the Western Division of the Southern District of Ohio.

This writ is brought to review a judgment for the defendant in a suit to recover damages for personal injuries sustained by plaintiff while in defendant's employ as a yard switchman in its railroad yards at Cincinnati, Ohio. While plaintiff was attempting to couple two freight cars, his foot was caught in an unblocked guard rail, and in his effort to extricate the foot his right hand was crushed between the drawheads of the cars, and injured so badly as to require amputation. Plaintiff had been in defendant's employ seven months. About one-third of that time he was engaged during the daytime, and two-thirds during the night. He had had nine years' experience as a railroad man. A railroad man of experience can see at a glance whether a guard rail or switch is blocked or not. There were a great many guard rails and switches in the yards where plaintiff worked. With the exception of a few, where experimental blocks were used, the defendant did not use blocks in either its guard rails or switches. Plaintiff said he did not know that the guard rail in which his foot was caught was not blocked, and that he had not noticed whether the guard rails and switches of defendant generally were blocked or not. The plaintiff relied on the following statute of Ohio, passed March 23, 1888 (85 Ohio Laws, p. 105): "Every railroad corporation operating a railroad or part of a railroad in this state shall, before the first day of October, in the year one thousand eight hundred and eighty-eight, adjust, fill or block the frogs, switches, and guard-rails on its tracks, with the exception of guard-rails on bridges, so as to prevent the feet of its employés from being caught therein. The work shall be done to the satisfaction of the railroad commissioner. Any railroad corporation failing to comply with the provisions of this act, shall be punished by a fine of not less than one hundred dollars, nor more than one thousand dollars." It appeared from the evidence that the defendant company was operating this railroad at the time of the passage of the act, and has operated it ever since. At the close of the evidence the trial court directed the jury to return a verdict for the defendant on the ground that defendant's failure to block its rails and switches was obvious, and the plaintiff must be held, notwithstanding the statute, to have assumed the risk of injury therefrom, and upon such verdict entered judgment for the defendant.

C. M. Cist and Harlan Cleveland, for appellant.

Judson Harmon, for appellee.

Before TAFT and LURTON, Circuit Judges, and THOMPSON, District Judge.

TAFT, Circuit Judge (after stating the facts as above). In the absence of the statute, and upon common-law principles, we have no doubt that in this case the plaintiff would be held to have assumed the risk of the absence of blocks in the guard rails and switches of the defendant. His denial of knowledge of the fact that the particular guard rail causing the injury was unblocked is entirely immaterial. Nor is his vague statement that he was so busy as not to notice whether the rails and switches of plaintiff generally were

unblocked in a yard where there were hundreds of guard rails and switches, and in which he was constantly at work for seven months, of more significance or weight. His evidence upon this point is not creditable to him. He could only have been ignorant of the admitted policy of the defendant in respect to blocks through the grossest failure of duty on his part in a matter that much concerned his personal safety and the proper operation of the road. In such a case the authorities leave no doubt that the servant assumes the risk of the absence of the blocks, and the employer cannot be charged with actionable negligence towards him. Railway Co. v. Seley, 152 U. S. 145, 14 Sup. Ct. 530; Appel v. Railway Co., 111 N. Y. 550, 19 N. E. 93; Railway Co. v. Risdon's Adm'r, 87 Va. 335, 339, 12 S. E. 786; Wood v. Locke, 147 Mass. 604, 18 N. E. 578; Railway Co. v. McCormick, 74 Ind. 440; Railway Co. v. Ray (Ind. Sup.) 51 N. E. 920; Rush v. Railway Co., 36 Kan. 129, 12 Pac. 582; Mayes v. Railway Co., 63 Iowa, 562, 14 N. W. 340, and 19 N. W. 680; Wilson v. Railroad Co., 37 Minn. 326, 33 N. W. 908; Railway Co. v. Baxter, 42 Neb. 793, 60 N. W. 1044; Railway Co. v. Davis, 54 Ark. 389, 15 S. W. 895.

The sole question in the case is whether the statute requiring defendant railway, on penalty of a fine, to block its guard rails and frogs, changes the rule of liability of the defendant, and relieves the plaintiff from the effect of the assumption of risk which would otherwise be implied against him. We have already had occasion to consider in a more or less direct way the effect of the statute. Railway Co. v. Van Horne, 16 C. C. A. 182, 69 Fed. 139; Railway Co. v. Craig, 19 C. C. A. 631, 73 Fed. 642. In these cases we held that the failure on the part of a railway company to comply with the statute was negligence per se. A further consideration of the statute confirms our view. The intention of the legislature of Ohio was to protect the employés of railways from injury from a very frequent source of danger by compelling the railway companies to adopt a well-known safety device. It was passed in pursuance of the police power of the state, and it expressly provided, as one mode of enforcing it, for a criminal prosecution of the delinquent companies. The expression of one mode of enforcing it did not exclude the operation of another, and in many respects more efficacious, means of compelling compliance with its terms, to wit, the right of civil action against a delinquent railway company by one of the class sought to be protected by the statute for injury caused by a failure to comply with its requirements. Unless it is to be inferred from the whole purview of the act that it was the legislative intention that the only remedy for breach of the statutory duty imposed should be the proceeding by fine, it follows that upon proof of a breach of that duty by the railway company, and injury thereby occasioned to the employé, a cause of action is established. Groves v. Lord Wimborne [1898] 2 Q. B. 402, 407; Atkinson v. Waterworks Co., 2 Exch. Div. 441; Gorris v. Scott, L. R. 9 Exch. 125. In this case there can be no doubt that the act was passed to secure protection and a newly-defined right to the employé. To confine the remedy to a criminal proceeding in which the fine to be imposed on conviction was not

even payable to the injured employé or to one complaining, would make the law not much more than a dead letter. The case of Groves v. Lord Wimborne involved the construction of a statute quite like the one at bar, and a right of action was held to be given thereby to the injured servant in addition to the criminal prosecution. The courts of Ohio have given the statute under discussion the same construction. Railroad Co. v. Lambright, 5 Ohio Cir. Ct. R. 433, affirmed by the supreme court of Ohio without opinion, 29 Wkly. Law Bul. 359.

Do a knowledge on the part of the employé that the company is violating the statute, and his continuance in the service thereafter without complaint, constitute such an assumption of the risk as to prevent recovery? The answer to this question is to be found in a consideration of the principles upon which the doctrine of the assumption of risk rests. If one employs his servant to mend and strengthen a defective staircase in a church steeple, and in the course of the employment part of the staircase gives way, and the servant is injured or killed, it would hardly be claimed that the master was wanting in care towards the servant in not having the staircase which fell in a safe condition. Why not? Because, even if no express communication is had upon the subject, the servant must know, and the master must intend, that the dangers necessarily incident to the employment are to be at the risk of the servant, who may be presumed to receive greater compensation for the work on account of the risk. The foregoing is an extreme case, perhaps, but it fairly illustrates the principle of assumption of risk in the relation of master and servant. Assumption of risk is a term of the contract of employment, express or implied from the circumstances of the employment, by which the servant agrees that dangers of injury obviously incident to the discharge of the servant's duty shall be at the servant's risk. In such cases the acquiescence of the servant in the conduct of the master does not defeat a right of action on the ground that the servant causes or contributes to cause the injury to himself; but the correct statement is that no right of action arises in favor of the servant at all, for, under the terms of the employment, the master violates no legal duty to the servant in failing to protect him from dangers the risk of which he agreed expressly or impliedly to assume. The master is not, therefore, guilty of actionable negligence towards the servant. This is the most reasonable explanation of the doctrine of assumption of risk, and is well supported by the judgments of Lord Justices Bowen and Fry in the case of Thomas v. Quartermaine, 18 Q. B. Div. 685, 695. See, also, language of Lord Watson in Smith v. Baker (1891) App. Cas. 325, and O'Maley v. Gaslight Co., 158 Mass. 135, 32 N. E. 1119. It makes logical that most frequent exception to the application of doctrine by which the employé who notifies his master of a defect in the machinery or place of work, and remains in the service on a promise of repair, has a right of action if injury results from the defect while he is waiting for the repair of the defect, and has reasonable ground to expect it. Hough v. Railway Co., 100 U. S. 213; Railroad Co. v. Babcock, 154 U. S. 190, 14 Sup. Ct. 978; Snow v.

Railway Co., 8 Allen, 441; Gardner v. Railroad Co., 150 U. S. 349, 14 Sup. Ct. 140. From the notice and the promise is properly implied ·the agreement by the master that he will assume the risk of injury pending the making of the repair.

If, then, the doctrine of the assumption of risk rests really upon contract, the only question remaining is whether the courts will enforce or recognize as against a servant an agreement express or implied on his part to waive the performance of a statutory duty of the master imposed for the protection of the servant, and in the interest of the public, and enforceable by criminal prosecution. We do not think they will. To do so would be to nullify the object of the statute. The only ground for passing such a statute is found in the inequality of terms upon which the railway company and its servants deal in regard to the dangers of their employment. The manifest legislative purpose was to protect the servant by positive law, because he had not previously shown himself capable of protecting himself by contract; and it would entirely defeat this purpose thus to permit the servant "to contract the master out" of the statute. It would certainly be novel for a court to recognize as valid an agreement between two persons that one should violate a criminal statute; and yet, if the assumption of risk is the term of a contract, then the application of it in the case at bar is to do just that. The cases upon the subject are by no means satisfactory, and, strange as it may seem, but few are in point. There is one English case which entirely supports our conclusion, and several dicta by English judges of like tenor. Several American cases on their facts also sustain the principle, though it must be confessed they do not very clearly state the true ground of their conclusion. There is one American case which is directly to the contrary, and possibly one other ought so to be regarded. There are several American cases that are said to be opposed to our view, but an examination of the facts in each will clearly distinguish them from the case at bar.

In the case of Baddeley v. Granville, 19 Q. B. Div. 423, the action was for the wrongful death of a miner, due to his employer's violation of a statute, and the defense of assumption of risk was set up. Section 52 of the coal mines regulation act of 1872 required a banksman to be constantly present while the men were going up or down the shaft, but it was the regular practice of the defendant, as the plaintiff's husband well knew, not to have a banksman in attendance during the night. The plaintiff's husband was killed, in coming out of the mine at night, by an accident arising through the absence of a banksman. It was held that the plaintiff's intestate did not, by continued service after he knew of the violation of the statute, thereby assume the risk of danger therefrom. The court say (page 426):

"An obligation imposed by statute ought to be capable of enforcement with respect to all future dealings between parties affected by it. As to the result of past breaches of the obligation, people may come to what agreements they like, but as to future breaches of it there ought to be no encouragement given to the making of an agreement between A. and B. that B. shall be at liberty to break the law which has been passed for the protection of A. If the supposed agreement come to this: that the master employs the servant on the terms that the latter shall waive the breach by the master of an obligation im-

posed on him for the benefit of others as well as of himself, such an agreement would be in violation of public policy, and ought not to be listened to."

The judges deciding the case of Thomas v. Quartermaine, 18 Q. B. Div. 685, 696, 703, had affirmed the view that assumption of risk did not apply to the neglect of a specific statutory duty imposed for the benefit of a class, but it was not the case before them. They said that the case of Clarke v. Holmes, 7 Hurl. & N. 937, 6 Hurl. & N. 349, proceeded on this ground, though it is difficult to find the ground stated in the opinions. Durant v. Mining Co., 97 Mo. 62, 10 S. W. 484; Grand v. Railroad Co., 83 Mich. 564, 47 N. W. 837; Coal Co. v. Taylor, 81 Ill. 590; and Boyd v. Coal Co. (Ind. App.) 50 N. E. 368, —were all cases where assumption of risk would have been a complete defense if applicable in case of a failure by the master to discharge a statutory duty to the servant, and the latter's express or implied acquiescence therein; and yet the servant was given judgment. The reasons stated in some of these cases for the conclusion are not entirely satisfactory, and in the cases from Illinois and Indiana no distinction is made between the doctrine of assumption of risk and of contributory negligence, but they are all authorities on their facts for our conclusion. The case of Knisley v. Pratt, 148 N. Y. 382, 42 N. E. 986, however, presented the precise question for decision, and the court of appeals held expressly that a servant, by continuing in the employment of a master who is violating a statute passed to protect the servant, does assume the risk of danger from such violation, and cannot make it the ground of recovery. This is followed by the circuit court of appeals for the Second circuit in a New York case. Carpet Co. v. O'Keefe, 25 C. C. A. 220, 79 Fed. 900. The court of appeals of New York, in Huda v. Glucose Co., 154 N. Y. 474, 482, 48 N. E. 897, does not treat the question decided in the Knisley Case as controlling the case of servants acquiescing in and assuming the risk of a violation of a fire-escape statute by their master, and the court declined to decide it. The decision in the Knisley Case is largely based on the decision of O'Maley v. Gaslight Co., 158 Mass. 135, 32 N. E. 1119, and Goodridge v. Washington Mills Co., 160 Mass. 234, 35 N. E. 484. We think the learned court of appeals of New York failed to observe that the O'Maley and Goodridge Cases were not suits under a statute defining and enjoining a specific duty of a master for the protection of servants, but were suits under an employer's liability act, which relieved the servant from the burden of certain defenses by the master in suits for injury sustained by him while in his master's employ, but did not attempt to change the master's duty to the servant, or to change the standard of negligence between them as that was fixed at common law. Hence it was held by the supreme judicial court of Massachusetts that the doctrine of assumption of risk applied to suits under the statute as at common law, and Thomas v. Quartermaine, 18 Q. B. Div. 685, which was also a suit under an employer's liability act, was much relied on. And yet in Thomas v. Quartermaine, as we have seen, the two lord justices, forming the majority deciding the case, expressly pointed out that in a suit under a statute positively fixing a standard of duty the doctrine of assumption of

risk could not be applied. The distinction between the employer's liability act and acts for the protection of servants in the nature of police legislation, like the act under consideration, is clearly shown in Griffiths v. Earl of Dudley, 9 Q. B. Div. 357, where, though the court held that a servant might "contract the employer out" of liability under the former act, it was said that this could not be done in respect of a liability arising under a statute like the one at bar, passed for the protection of servants. The Knisley Case, which, in our judgment, was wrongly decided, and many others in which a right conclusion was reached, seem to us to confuse an agreement to assume the risk of an employment, as it is known to be to the servant, and his contributory negligence. That, under certain circumstances, the one sometimes comes very near the other, and cannot easily be distinguished from the other, may be conceded; but in most cases there is a broad line of distinction, and it is so in this case. For years employés worked in railroad yards in which blocks were not used, and yet no one would charge them with negligence in so doing. The switches and rails were mere perils of the employment. Assumption of risk is in such cases the acquiescence of an ordinarily prudent man in a known danger, the risk of which he assumes by contract. Contributory negligence in such cases is that action or nonaction in disregard of personal safety by one who, treating the known danger as a condition, acts with respect to it without due care of its consequences. The distinction has been recognized by the supreme court of the United States. In Railway Co. v. O'Brien, 161 U. S. 451, 16 Sup. Ct. 618, the court said:

"The second instruction was properly refused because it confused two propositions,—that relating to the risks assumed by an employé in entering a given service, and that relating to the amount of vigilance that should be exercised under given circumstances."

In Hesse v. Railroad Co., 58 Ohio St. 167, 169, 50 N. E. 355, Judge Shauck, speaking for the supreme court of Ohio, said:

"Acquiescence with knowledge is not synonymous with contributory negligence. One having full knowledge of defects in machinery with which he is employed may yet use the utmost care to avert the dangers which they threaten."

The distinction is exceedingly well brought out in Railway Co. v. Baker, 33 C. C. A. 468, 91 Fed. 224, by Judge Woods, speaking for the circuit court of appeals for the Seventh circuit. There the action was for damages against a railroad company for injury sustained by reason of a breach of a federal statute requiring the company to furnish grab irons. The statute, out of abundant caution, expressly provides that the continued service of the employé with knowledge of the breach of statutory duty by the company should not be regarded as an assumption of the risk. The court held that this proviso did not prevent the company from successfully maintaining the defense of contributory negligence. Assumption of risk and contributory negligence approximate where the danger is so obvious and imminent that no ordinarily prudent man would assume the risk of injury therefrom. But where the danger, though present and appreciated, is one which many men are in the habit of assum-

ing, and which prudent men who must earn a living are willing to assume for extra compensation, one who assumes the risk cannot be said to be guilty of contributory negligence if, having in view the risk of danger assumed, he uses care reasonably commensurate with the risk to avoid injurious consequences. One who does not use such care, and who, by reason thereof, suffers injury, is guilty of contributory negligence, and cannot recover, because he, and not the master, causes the injury, or because they jointly cause it. Many authorities hold that contributory negligence is a defense to an action founded on a violation of statutory duty, and this undoubtedly is the proper view. Such is the case of Krause v. Morgan, 53 Ohio St. 26, 40 N. E. 886, where the employé, in spite of a warning from his superior, and in the face of the most palpable danger, exposed himself to certain injury, and then sought to hold his employer liable because he had not employed the statutory methods of protecting him from the danger. In Railway Co. v. Craig, 19 C. C. A. 631, 73 Fed. 642, we held that the Krause Case was one of contributory negligence, and followed it as such. The syllabus confuses the difference between assumption of risk and contributory negligence, but the syllabus and opinion are, of course, to be restrained to the facts. The following cases, relied on by counsel for the railway company, were also cases of contributory negligence in suits for violation of specific statutory duty: Coal Co. v. Estievenard, 53 Ohio St. 43, 40 N. E. 725; Coal Co. v. Muir, 20 Colo. 320, 38 Pac. 378; Holum v. Railway Co., 80 Wis. 299, 50 N. W. 99; Grand v. Railroad Co., 83 Mich. 564, 47 N. W. 837; and Taylor v. Manufacturing Co., 143 Mass. 470, 10 N. E. 308. In the last two cases the distinction between contributory negligence and assumption of risk is clearly referred to.

For the reasons given, we think the court below was in error in holding that the plaintiff assumed the risk of injury from the failure of the defendant to comply with the statute passed for his protection, and that the case should have been submitted to the jury on the issue whether, assuming the unblocked guard rails and frogs as a condition of the situation, he used due care to avoid injury therefrom. Judgment reversed, at costs of the defendant, with directions to order a new trial.