### COOPER v. BALTIMORE & O. R. CO.

(Circuit Court of Appeals, Sixth Circuit. February 19, 1908.)

No. 1,730.

1. MASTER AND SERVANT—RAILROADS—PERSONAL INJURY—UNBLOCKED FROG—PROXIMATE CAUSE.

In an action against a railway company for injury to a switchman, whose foot was caught in a frog while he was being dragged by an engine, evidence *held* sufficient to show that the frog had not been blocked as expressly required by Act April 25, 1898 (Rev. St. Ohio 1906, § 3365–18; 93 Ohio Laws, p. 342), and that the catching of his foot was the proximate cause of the accident.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 954–977.

Duties of railroad companies to block switches, see note to Hauss v. Lake Erie & W. R. Co., 46 C. C. A. 98.]

2. SAME—CONTRIBUTORY NEGLIGENCE.

In an action against a railway company for injury to a switchman, evidence *held* sufficient to sustain a finding that he was not guilty of contributory negligence in stepping off of the footboard in front of a switch engine for the purpose of crossing the track.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 988–996.]

3. SAME—DUTY TO BLOCK FROGS.

Act April 25, 1898 (Rev. St. Ohio 1906, § 3365–18; 93 Ohio Laws, p. 342), requiring railroad companies to block all angles in frogs, switches, and crossings in all yards, etc., where trains are made up, not only requires frogs to be blocked for the protection of employés who may step into them, but also for the protection of those dragged into them by an engine.

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Ohio.

G. M. Skiles and R. B. Newcomb, for plaintiff in error.

A. E. Clevenger and S. H. Tolles, for defendant in error.

Before SEVERENS and RICHARDS, Circuit Judges, and COCHRAN, District Judge.

RICHARDS, Circuit Judge. The plaintiff, James H. Cooper, while acting as brakeman on a switching crew of the defendant, the Baltimore & Ohio Railroad Company, was severely injured through getting his foot caught in an unblocked frog. This occurred on October 29, 1906, at about 1 or 2 o'clock at night. Just before the accident oc-

curred, Cooper was riding on the footboard in front of the engine. It was about time for the crew of the engine to stop for supper. The engine, after shifting certain cars, stopped on one of the tracks not far from the shanty where the crew was to take supper. After the engine stopped, Cooper, believing and having reasonable ground to believe, that the engine would not be started again without proper notice, stepped from the footboard onto the track for the purpose of crossing the same in order to go to the shanty. He was riding on the right side of the footboard, and it was necessary to step onto the track in order to cross it, because the drawhead of the engine divided the footboard into two parts, so he could not follow the footboard to the left side of the front of the engine. After stepping on the track, and while about to cross it, the engine started slowly forward. At that time, the engine, being a leaky one, was in a cloud of steam. The night was dark. The moving engine struck Cooper and knocked him down; he fell on his back between the tracks and the footboard began to move over him. According to the testimony, the engine was proceeding at the rate of two or three miles an hour. As the footboard passed over Cooper, it caught some portion of his clothing, and he, reaching up, caught hold of the footboard, so that, thus holding on himself and being held by some part of his clothing, he was dragged on his back. He was perfectly conscious and was yelling or "hollering" all the time, trying to attract attention and have the engine stopped. If he had succeeded, and the engine had been stopped while he was thus being dragged along, he would have suffered no serious injury. Then, suddenly, something caught his left foot, he was torn loose at once from the footboard, and the next instant one of the driving wheels of the engine struck him. His left foot was mashed into the frog, and his left leg was crushed off above the knee. In some way his right foot was thrown over and half of it was crushed. Then the engine stopped and he, conscious still, was helped out. An examination of the frog was made that night and again the next morning in daylight. The frog was unblocked. What was left of the left foot was found mashed down with his shoe into the frog.

The court below, after suggesting a discussion of the questions, first, whether the plaintiff was guilty of contributory negligence, second, whether the negligence claimed was the proximate cause of the injury, and, third, whether the fact that the frog was unblocked was negligence, in view of the circumstances of this particular accident, planted itself in its opinion, in which it directed a verdict for the defendant, on the ground that in this case the plaintiff was caught in an unblocked frog while being dragged involuntarily, and that the statute requiring frogs to be blocked was intended solely to protect a person while making a voluntary move. In the course of the opinion, the court says that there was not any dispute as to the proximate cause, although there might be on the question of contributory negligence. The court rests its direction to take the case from the jury on the ground that "the statute involved here was not contemplated to keep men's feet from being caught when they were being dragged under a moving train or car." If the plaintiff was engaged in some sort of voluntary locomotion, whether he was off his balance or not, the court below

thinks the statute would protect him, but in this case he was on his back and being dragged, and so he was outside the law.

We are unable to agree with the view of the court below. The law required that "every railroad corporation operating a railroad in the state, shall, on or before the first day of June, 1899, adjust, fill or block, all angles in frogs, switches, and crossings on their roads in all yards, divisional and terminal stations, where trains are made up, with the best known sheet steel spring guard or wrought iron appliances approved by the Commissioner of Railroads and Telegraphs." Section 3365–18, Rev. St. (93 Ohio Laws, p. 342), passed April 25, 1898. This act went into effect on June 1, 1899. It required every railroad company to fill or block all angles in frogs, in all yards or stations where trains are made up. This was a frog in a yard where trains are made up. We think there was testimony tending to show that, as to this frog, the law had not been complied with, and that the catching of the plaintiff's foot in it was the proximate cause of the accident. Union Pac. R. R. v. James, 163 U. S. 487, 16 Sup. Ct. 1109, 41 L. Ed. 236. Moreover, there was sufficient testimony for the consideration of the jury to the effect that Cooper, in stepping off of the footboard in front of the engine under the circumstances he did, was not guilty of contributory negligence.

There remains the broad question as to the construction of the act in the particular stated, upon which the court below really rested its opinion. Is the act to be construed so as to protect even persons who happen to be dragged into an unblocked frog, or limited to these alone who happen to step into it? The Legislature might have intended to protect every person lawfully in the neighborhood, who might voluntarily step into an unblocked frog, but could it have contemplated or intended to cover the case of a man who happened to be struck, knocked down by an engine, and dragged into an unblocked frog? It he was an employé, as the plaintiff was, and happened to be knocked down by his own engine, when he was in the discharge of his duty, and without fault on his part, we do not see why the act should not be construed so as to protect him. He certainly had a right as much as any one to rely upon all the frogs and switches in that yard being blocked, as required by law. If there was a reason for having the frog blocked while he was walking about, able to control his movements, there was an additional reason when he was so unfortunate as to be knocked down by an engine and dragged into the frog. The accidents to which switchmen are liable are infinite in number. A switchmen is required to couple, uncouple, and cut out cars, run ahead and hang on behind, and in an instant may find himself in a situation where death or some horrible injury seems inevitable. He can only escape by some great unforeseen effort. Such was Cooper's condition. He was not expecting to be knocked down, but when he was, he did the only thing possible, he clutched the footboard and held on. As he puts it "I couldn't get out, I had to hold on to keep in." If the frog had been blocked, his left foot would have slid over, the train would have stopped in a few feet, and he would have crawled out unharmed. But the unblocked switch which every railroad employé who takes his life in his hands

for the service of the public has a right to believe is blocked was not, and the trap caught him.

The Legislature had particularly in view the perils of switchmen in all yards, and divisional and terminal stations, where trains are made up, and the sudden and unexpected calls that are made upon their coolness and strength and activity in doing their work in such places. It necessarily had in mind the necessity of making the tracks fully safe by blocking the frogs, not only to protect the switchman when he was walking and had complete control of his muscles of locomotion, but also and especially when, deprived of the voluntary use of his legs and feet, he was dragged along by a car and put at the mercy of an unblocked frog.

In the case of the P. C. C. & St. L. Ry. v. Burroughs, 6 Ohio S. & C. P. Dec. 530, the plaintiff's intestate, who was a switchman, was struck by an approaching caboose, and to protect himself held on to the hand hold of the car. He was dragged along until his foot was caught in an open frog, when he was run over and killed. The case was reversed and tried again. The second decision appears in Ry. Co. v. Burroughs, 9 Ohio S. & C. P. Dec. 324. The court says the deceased "had the right to presume that any frogs on the track were blocked, he was not compelled to so conduct himself as to avoid being struck by the car and killed by his foot being dragged into an unblocked frog. As he had the right to presume there was no unblocked frog, he had the right to conduct himself accordingly." This judgment was affirmed in 60 Ohio St. 630, 54 N. E. 1107, without report.

The case of L. S. & M. S. Ry. v. Winslow, 4 O. C. D. 242, the plaintiff below had complained to the yardmaster of an unblocked switch, and he was promised that it would be blocked. But this was not done, and afterwards the plaintiff, being a switchman, was at work about 12 feet from the frog. He had space enough to couple the cars, if there had been as usual but a slight movement of them, but the engineer backed suddenly and violently, and the plaintiff, having hold of the car with one hand, was thrown in the direction of the movement of the train, and before he could right himself, was over the danger spot and his foot caught in the frog. This case was settled and dismissed in the Supreme Court, May 14, 1895. It is true that this case, like the preceding one, was under the act of 1893, but there was no material difference between them in the respect under consideration. In both cases, the employé was virtually dragged into the unblocked frog. Both these cases were before the passage of the present act and must have been known to the Legislature, and therefore it is clear the Legislature knew that it was necessary to have frogs blocked not only for the protection of employés who might step into them, but also for the safety of those who might be dragged into them.

In the case of Herrick v. Quigley, 101 Fed. 187, 41 C. C. A. 294, the switchman had made the coupling. He then attempted to step out from between the cars, but the planking on the highway crossing was so defective that he slipped. As he did this, he grasped the grab iron and endeavored to jump out from under the car. He was about to accomplish this when his foot slipped into the hole between the ends of the two ties, and he was run over and killed. This illustrates how

necessary it is for the benefit of switchmen to have a safe and secure footing. If there had been an unblocked frog there, it might have served the same purpose that the hole between the ends of the ties did. The principal cases that have been before this court growing out of unblocked frogs, are those of the C. H. & D. Ry. v. Van Horne, 69 Fed. 139, 16 C. C. A. 182; L. E. & Western Ry. v. Craig, 73 Fed. 642, 19 C. C. A. 631; and Narramore v. C., C., C. & St. L. Ry., 96 Fed. 298, 37 C. C. A. 499, 48 L. R. A. 68.

In the Van Horne Case, the plaintiff, a switchman, while in the discharge of his duties, caught his foot in an unblocked guard rail, was run over and lost a part of the foot. Judge Taft, speaking for the court, said (page 140 of 69 Fed., page 184 of 16 C. C. A.):

"There was no issue before the jury as to whether the failure to insert a block was negligence on the part of the railroad company. It was negligent, as a matter of law, and the court properly charged the jury that, if the block was not there, and the absence of it caused the accident, the defendant was liable."

In the case of L. E. & W. Ry. v. Craig, 73 Fed. 642, 19 C. C. A. 631, the court, speaking by Judge Taft, called attention to the fact that it had already held in Railroad Co. v. Van Horne, 69 Fed. 139, 16 C. C. A. 182, that the effect of this statute (the Ohio law) is to make a failure by the railroad company to comply with it negligence, as matter of law. It pointed out the ruling of the Supreme Court of Ohio in construing an analogous statute requiring mine owners to adopt safety appliances for their employés. Krause v. Morgan, 53 Ohio St. 26, 40 N. E. 886.

In the case of Narramore v. C., C., C. & St. L. Ry., 96 Fed. 298, 37 C. C. A. 499, 48 L. R. A. 68, Judge Taft, still speaking for the court, restated the rule already announced in the Van Horne and Craig Cases, that the failure on the part of the railroad company to comply with the statute requiring frogs to be blocked was negligence per se. In this opinion, the distinction is drawn between the assumption of the risk and contributory negligence, but, as that is not involved in the present case, it is unnecessary to enlarge upon it. There is no suggestion in any of these cases that the protection afforded by the law can be limited so as to exclude employés who have the misfortune to be injured through being dragged into an unblocked frog by an engine or car.

Believing that the Ohio statute requiring the blocking of frogs applied in this case, and that the court erred in directing a verdict for the defendant, the judgment is reversed, and the case remanded for a new trial.